STATE, Respondent, v. WOOD, Appellant

(9 N. W.2d 151.)

(File No. 8526. Opinion filed April 24, 1943.)

**Burton Penfold,** of Belle Fourche, for Defendant and Appellant.

**Leo A. Temmey,** Atty. Gen., and **Irwin R. Erickson,** Asst. Atty. Gen., for Plaintiff and Respondent.

POLLEY, J. Appellant was convicted of the larceny of a pig (described in the record as a "red boar pig"). Jonas C. Wood, the appellant and the complaining witness, John M. Apland, both lived in the city of Belle Fourche. On and for some time prior to the month of February, 1941, Apland had the pig that was the subject of the larceny in his pen at Belle Fourche. The pig was known to have been there on the evening of February 13, 1941, but on the morning of the 14th he was gone. When Apland discovered the pig was gone, he made quite an extended search, locally, and inquired of many people for his pig; among others, he asked appellant on February 15 if he had seen his pig. Appellant said he had not seen him and suggested that he might have been struck by a car. Apland continued the search for his pig and sometime later learned that a pig answering to the description of his pig had been sold in a sales ring in Rapid City on the 14th day of February, 1941. Tracing the pig from there, Apland finally found and recovered his pig at Valentine, Nebraska, and on the 23d day of July, 1941, caused the arrest of appellant for the larceny of the pig. The arrest of appellant was made by William

Schuft, a deputy sheriff of Butte County, and Floyd Short, an F. B. I. agent. These parties testified that when the arrest was made appellant admitted that he took the pig, but said nothing about owning him, and said it is just a matter of getting "things shaped up and getting out of it the easiest way I can."

At the trial defendant denied that he had made the admissions testified to by said officers, and testified that he bought the pig from Apland, and was the owner thereof and on the 14th day of February, 1941, he took said pig to Rapid City and sold him in a sales ring at that place. To substantiate his testimony that he purchased the pig from Apland he introduced Exhibit "I" in evidence which purported to be a receipt for money he had paid Apland for the pig. This instrument is in the record and reads as follows:

"Feb. 2-40
Paid John Apland
$12.00 for
Buttermilk & Hog
John M. Apland."

Apland testified that he did give defendant a receipt for money, but that it was for money paid for buttermilk, and for only $2; that it had been changed after he gave it to appellant by putting the figure "1" in front of the "2" making the $2 read "$12.00" and by writing the words "& Hog" after "buttermilk." It was admitted that appellant had been buying buttermilk from Apland and he claimed that the receipt was for money appellant had paid him for buttermilk. Then the issue became a question of ownership of the pig at the time appellant took him to Rapid City and the court instructed the jury on that issue as follows: "You are instructed that before you can convict the defendant you must first be satisfied beyond a reasonable doubt that the hog in question was not the property of the defendant and that the same belonged to the said John Apland and without any rightful claim of ownership on the part of the defendant."

■ Appellant in his brief predicates error upon the reception of the appellant's alleged admission of guilt, upon the ground that no foundation was laid for the admission of such testimony. The parties who made the arrest testified that at the time they claimed these admissions were made they explained to appellant what his constitutional rights were and that whatever he told them might be used against him in the trial. Thereupon the defendant said: "I know what my constitutional rights are, so you don't have to bother about that," and he further said that he had been in two such jams before and had served time in the penitentiary for each offense. Appellant's rights were not prejudiced even though his constitutional rights had not been explained to him. There was no error in the reception of these admissions of guilt. The matter of the admissibility of this testimony is fully considered at page 418, 20 Am. Jur., and by this court in State v. Nicholas, 62 S. D. 511, 253 N. W. 737, and State v. Smith, 47 S. D. 216, 197 N. W. 231.

■ It is contended by appellant that the evidence on behalf of the state is not sufficient to sustain the conviction of the larceny by the appellant. We cannot agree with this contention by appellant. Up to the 13th of February, 1941, Apland was admittedly the sole owner of the pig; without apparently parting with his ownership or control of the pig up to that time, the defendant testified that on the morning of the 14th of February, 1941, he took the pig to Rapid City and there sold him as his own. This, of itself, is sufficient to establish the larceny.

■ After the case had been tried, judgment entered and an appeal taken to this court, appellant caused the record to be remanded to the trial court in order that he might move for a new trial on the ground of newly discovered evidence. In support of this motion appellant filed the affidavits of five different parties, to wit: Claud Taylor, Frank Rolph, Ray Kalkbrenner, Julius Morgan and Frank Arney. In the affidavit of Claud Taylor, he says that in a certain conversation he had with Apland, Apland said: "I

sold that hog to him (referring to Jonas C. Wood) then he turns around and steals the hog from me." And again in the same affidavit Taylor said: "Apland told affiant that Wood had made some payment on the hog," and Frank Rolph said in his affidavit that in a conversation he had with Apland during the month of January, 1941, Apland said: "That he had sold the red boar to Jonas C. Wood." These statements are not clear, and certainly not very strong statements of fact, but accepting them at their face value, they are only cumulative and not sufficient as a ground for a new trial for newly discovered evidence and would not probably change the result on another trial. In State v. Laper, 26 S. D. 151, 128 N. W. 476, 478, this court said: "The granting of a motion for a new trial upon the grounds of newly discovered evidence is not favored by the courts, and where the evidence is simply cumulative, or merely impeaching evidence, and would not probably change the verdict on another trial, the motion will ordinarily be denied; and, in order to obtain a new trial upon the ground of newly discovered evidence, defendant must show that he has used due diligence to procure the evidence at the former trial," and to the same effect are: State v. McKean, 46 S. D. 85, 190 N. W. 781 and State v. Keliher, 46 S. D. 484, 194 N. W. 657.

The matter of the sale of this pig to appellant was gone into by the defendant in detail at the trial. He testified to the transaction in which the ownership of the pig was said to have been transferred to appellant and his testimony was corroborated by the testimony of three other witnesses who claimed to have been present when this transaction was claimed to have taken place, and the testimony of these two witnesses, Taylor and Rolph, was cumulative as to the evidence of that transaction and not sufficient to warrant a new trial on the ground of newly discovered evidence.

 The affidavits of Ray Kalkbrenner, Julius Morgan and Frank Arney, tended only to prove that the hog recovered by Apland at Valentine, Nebraska, was not the hog that was sold by Wood at Rapid City on the 14th day of

February, 1941. The matters contained in these affidavits are entirely immaterial. The larceny was complete when the appellant took the pig into his possession and started with him for Rapid City. It was not material that appellant sold the pig that day in Rapid City or what became of him after that so far as this case is concerned.

We find no reversible error in the record and the judgment appealed from is affirmed.

All the Judges concur.